IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ZACHERY PACHECO,

        Plaintiff,

                                          Case No. 09-cv-1207 BB/DJS

    v.

BRUCE HOPMEIER and
THE ESPANOLA PUBLIC
SCHOOL DISTRICT
BOARD OF EDUCATION,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

On December 29, 2009, Plaintiff Zachery Pacheco, a student at Espanola High School, filed suit against several individuals and entities under 42 U.S.C. § 1983 for, *inter alia*, violation of his Fourth and Fourteenth Amendment rights. Mr. Pacheco alleges that Defendants seized him from his high school classroom, forcibly handcuffed him, searched his person, and transported him, entirely without either his or his parents' consent, to the New Mexico State police station. Mr. Pacheco claims that Defendants had neither probable cause nor reasonable suspicion that he had violated any school rule or committed any crime, and consequently argues that they searched and seized him unreasonably, in violation of the Fourth and Fourteenth Amendments. On April 1, 2010, Defendants Principal Bruce Hopmeier and the Espanola Public School District Board of Education (School Board) filed a Motion for Summary Judgment (Doc. 13) and on May 18, 2010, Plaintiff filed a Cross Motion for Partial Summary Judgment Against Defendant Hopmeier (Doc. 31). The Court must determine whether, under Rule 56 of the Federal Rules of Civil Procedure, the Court should grant summary judgment to either Defendants or Plaintiff.

For the reasons explained below, the Court concludes that to the extent that Plaintiff alleged a negligence claim, summary judgment is proper on that claim, but not on the other claims. Therefore, Defendants' Motion for Summary Judgment will be GRANTED in part and DENIED in part. Further, the Court concludes that summary judgment for Plaintiff is proper on Plaintiff's Fourth Amendment claims. Thus, Plaintiff's Motion for Summary Judgment will be GRANTED.

## Factual and Procedural Background

On November 6, 2007, New Mexico state police officer Robert Larsen came to Espanola High School and told the school principal, Bruce Hopmeier, that Plaintiff Zachery Pacheco, then a sixteen-year-old student at the school, was a potential witness to a crime committed by another. Officer Larsen told Principal Hopmeier that because of Zachery's status as a potential witness, they wanted to take him to the police station for questioning. Principal Hopmeier was told that Zachery was not personally suspected of any crime. Further, neither party suggests that anyone suspected Zachery of having violated any school rules. The above facts are undisputed.

However, the parties dispute whether or not any officers told Defendant Hopmeier that Zachery's parents had consented to Zachery's removal to the police station. Defendant Hopmeier claims that an officer had informed him that Zachery's mom consented to Zachery's removal from the school. Plaintiff disputes this fact, noting that (a) Officer Larsen stated that he had not told Principal Hopmeier that anyone had contacted Zachery's parents, (b) no one at the police station had contact information for Zachery's parents before visiting the school on November 6, and (c) the police did not in fact contact Zachery's parents until after arresting him and taking him off campus.

Based on Officer Larsen's request to take Zachery to the police station, Principal Hopmeier ordered the school nurse to retrieve Zachery from class and to tell him falsely that the nurse needed to check his immunization records. Once the nurse escorted Zachery from the classroom, Officer

Larsen confronted Zachery and asked him for his cell phone. Zachery believed that Officer Larsen just wanted to borrow it temporarily and handed it over. Officer Larsen then confiscated Zachery's phone. Subsequently, Officer Larsen told Zachery that he had no choice and had to accompany Officer Larsen to the police station for questioning. Zachery refused, insisting that he did not want to go. All parties agree that Zachery made clear that he did not consent to being taken to the station.

However, the parties disagree about how Zachery physically responded when Officer Larsen insisted that Zachery come to the police station against his will. Defendants claim that Zachery became "unmanageable." In contrast, Plaintiff asserts that he did not try to run away or physically resist the officers, but rather simply tensed up his body. When Zachery made clear his unwillingness to leave campus with the officers, Officer Larsen twisted Zachery's right arm behind his back while a second officer twisted his left arm. Then Officer Larsen handcuffed Zachery. While being handcuffed, Zachery cried and repeated that he did not want to go anywhere with Officer Larsen. During the handcuffing, Officer Larsen allegedly caused Zachery serious shoulder injuries.

An Espanola High School policy permits an "administrative authority" to direct a search or an "authorized person[s]" to conduct a search of a student only when they have "reasonable suspicion" that a crime or breach of disciplinary rules is occurring or has occurred. Further, the policy permits an "administrative authority" to direct or conduct a search when he or she has "reasonable cause" to believe that the search is "necessary to help maintain school discipline." (Doc. 35, Pl. Ex. 10 at 3.) Further, the extent of the search "must be reasonably related to the infraction." (*Id.*) Defendant Hopmeier, relying on his assertion that Zachery became "unmanageable" when Officer Larsen insisted that Zachery come to the police station, describes the handcuffing as a "disciplinary measure." (Doc. 14, at 5.) Plaintiff disputes this characterization.

3

Further, after Officer Larsen had handcuffed Zachery, Chris Archuleta, a security guard for the high school, claims that Principal Hopmeier ordered him to search Zachery. In contrast, Defendant Hopmeier denies knowledge of the search and thus implicitly denies that he advised Mr. Archuleta to search Zachery. Officer Larsen claims that he did not request the search and did not help conduct it. So either at Principal Hopmeier's orders, or on his own initiative, Mr. Archuleta proceeded to conduct a pat down search on Zachery and then searched his pockets, his wallet, and his shoes. No official at this time had any information that Zachery was armed, had any contraband on him, or had committed any crime. Mr. Archuleta claims that Principal Hopmeier was present during the search. Defendant Hopmeier denies being present.

After the search, Officer Larsen escorted Zachery against his will to the New Mexico State police station. The entire detention lasted from thirty minutes to an hour. Subsequently, on December 29, 2009, Zachery filed suit against, *inter alia*, Principal Hopmeier and the Espanola Public School District Board of Education for, among other things, violating his Fourth and Fourteenth Amendment rights. On April 1 and May 18, 2010, Defendants and Plaintiff filed the motions for summary judgment now before the Court.

## Discussion

Summary judgment is only proper if the pleadings, affidavits, and other exhibits show that there is no genuine issue regarding any material fact and that on the undisputed facts, the law entitles the movants to judgment in their favor. *See* Fed. R. Civ. P. 56(c)(2). Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court may not pass on the credibility of witnesses or weigh evidence, but rather must assess objectively whether factual issues exist for a jury to decide. *See id.* at 249. A dispute of facts is "genuine" if a reasonable jury could return a verdict for the nonmoving party

based on the nonmovant's version of the facts. *See id.* at 248. In assessing whether genuine issues of material fact exist, the court must view the facts and draw reasonable inferences in the light most favorable to the non-movant. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1379 (10th Cir. 1994).

**I.      Validity of Plaintiff's Fourth Amendment Claims**

Plaintiff Zachery claims that Defendants violated the Fourth Amendment by unreasonably seizing and searching him. The Fourth Amendment, which applies to the states through the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that not only police officers, but also school administrators are state actors bound by the Fourth Amendment. *New Jersey v. T.L.O.*, 469 U.S. 325, 333-37 (1985). With these basic principles in mind, the Court first addresses the seizure claim and then the search claim.

**A.  Seizure Claim**

*1.  Seizure*

Under the Fourth Amendment, a seizure occurs when "a reasonable person would have believed that he was not free to leave." *Jones v. Hunt*, 410 F.3d 1221, 1225-26 (10th Cir. 2005) (quoting *Michigan v. Chesternut*, 486 U.S. 567 (1988)). The court views the facts as a reasonable person of the age and circumstances of the detained person. *See id.* at 1226. In the Tenth Circuit, courts look to the following factors to determine whether a detention amounts to a seizure: whether (a) several officers were present; (b) any officer brandished a gun; (c) any officer physically touched the detainee; (d) any officer used aggressive language or a tone of voice conveying that compliance with the officer's request was compulsory; (e) any officer retained the detainee's property for a prolonged period; (f) any officer requested the detainee to accompany the officer to the station; (g) the interaction occurred in a nonpublic or a small, enclosed place; and (h) other members of the

public were present. *Id.* None of these factors are individually dispositive and the "strong presence" of a few factors may establish that a reasonable person would not have felt free to leave. *Id.*

In *Jones*, the Tenth Circuit found a seizure where a police officer and state social worker went to a high school, cornered a sixteen-year-old student, threatened her that she could not live with her mother, contrary to a court order, then left the student and later returned when she was in the school counselor's office and harassed her for several hours and threatened to arrest her. *Id.* at 1224, 1226. The court stressed that (a) the student was a mere sixteen-year-old, (b) both the police officer and social worker were government officials, (c) these officials threatened her, and (d) the detention took place in a small, confined space to which the student had been sent by a school administrator. *Id.* at 1226. The court concluded that the sixteen-year-old student would not have felt free to flaunt the direction of the school official who instructed her to go to the counselor's office, and that she would not have felt free to leave once the officials began threatening her in the office. *Id.* at 1227.

Here, much like in *Jones*, two police officers went to Zachery's high school, arranged for the school principal to call him out of class, at which point the police cornered Zachery and demanded that he accompany them to the police station for questioning. They also asked to see Zachery's cell phone and then confiscated it. When Zachery repeatedly refused to voluntarily go with them, the police handcuffed him and escorted him against his will to the station. This detention thus involved five of the factors listed in *Jones*: (a) the threatening presence of multiple police officers, (b) physical touching by an officer; (c) using aggressive language or tone of voice indicating that compliance with an officer's request is required; (d) prolonged retention of Zachery's personal effects; and (e) a request to accompany the officer to the station. Just as in *Jones*, when viewed from the eyes of a vulnerable sixteen-year-old, the "strong presence" of several factors establishes that a reasonable

sixteen-year-old would not have felt free to leave. Thus, the Court finds that detaining Zachery at the school and transporting him to the police station constituted a seizure.

### 2. *Reasonableness of the Seizure*
#### a. *Determining the Proper Standard*

Having concluded that there was a seizure for Fourth Amendment purposes, the Court must decide whether or not the seizure was reasonable under the Fourth Amendment. In this case, a New Mexico state police officer came to Espanola High School and told Principal Hopmeier that Plaintiff was a potential witness to a crime committed by another and that the police therefore wanted to take him to the police station for questioning. Acting on this request, Principal Hopmeier assisted the police in executing the seizure. Thus, this case involves a police-initiated seizure on school grounds. Because under the Fourth Amendment different standards govern seizures by school administrators on school grounds than govern police-initiated seizures generally, this case raises the issue of what Fourth Amendment standard applies when a police officer requests a seizure on school grounds.

Defendant Hopmeier argues that *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985), which governs searches by school administrators on school grounds, provides the appropriate test under the Fourth Amendment because the seizure occurred in a school setting. Plaintiff disagrees, arguing that because a police officer ordered the seizure, the proper standard is the one governing police-initiated seizures generally: the probable cause standard.

"With limited exceptions, a search or seizure requires either a warrant or probable cause." *Jones*, 410 F.3d at 1227. The Supreme Court recognized one such exception in *T.L.O.* The Court held that while the Fourth Amendment applies to searches conducted by public school officials on school grounds, the special circumstances of the public school environment justify departure from the probable cause requirement. *See T.L.O.*, 469 U.S. at 333, 341. It established that as applied to school administrators, the legality of a search should depend on the reasonableness, under all

7

circumstances, of the search. *See id.* It established a two-part test: (1) whether the officers initially

had justification for the search; and (2) whether the scope of the search was reasonably related to the

circumstances that initially justified the interference. *See id.* In the Tenth Circuit, the *T.L.O.* standard

applies not just to searches, but also to seizures by school administrators on school grounds. *See*

*Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989); *Couture v. Bd. of Educ. of the Albuquerque*

*Pub. Sch.*, 535 F.3d 1243, 1250 (10th Cir. 2008). Thus, in the Tenth Circuit, a seizure made by a

school administrator on school grounds must be both (1) initially justified and (2) reasonably related

in scope to the circumstances that justified the initial seizure. *Couture*, 535 F.3d at 1250. In contrast

to school administrators in the school context, police officers who seize and transport a person

against his or her will to a police station for questioning must have probable cause. *See Kaupp v.*

*Texas*, 538 U.S. 626, 630 (2003); *see also Dunaway v. New York*, 442 U.S. 200, 216 (1979) (holding

that police needed probable cause to take a person from a neighbor's home to the police station for

interrogation).

Defendants cite *Gray v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006), *Shade v. City of*

*Farmington*, 309 F.3d 1054, 1061 (8th Cir. 2002), and *Tarter v. Raybuck*, 742 F.2d 977, 983 (6th

Cir. 1984) in urging that the *T.L.O.* standard should apply to all seizures conducted jointly by police

officers and school officials on school grounds. However, in each of Defendants' cited cases, the

seizure had been initiated to maintain school order or security. *See Gray*, 458 F.3d at 1305 (noting

that the officer had witnessed the plaintiff verbally threaten a teacher, which constituted both a crime

and a security threat); *Shade*, 309 F.3d at 1060-61 (student seen with a knife, which presented a

safety concern); *Tarter*, 742 F.2d at 979, 983 (school officials had observed actions that indicated

that the plaintiff had been involved in the sale of illicit drugs in violation of school policy).

Therefore, these cases do not address which standard should apply when the officials initiate the seizure on school grounds for a reason other than maintaining school security.

In *Jones v. Hunt*, the Tenth Circuit has considered which of these two standards applies when a school administrator assists police officers to de facto arrest a student on school grounds for a purpose other than maintaining order on school property. The Tenth Circuit there held that the relevant Fourth Amendment standard is not the *T.L.O.* standard where a joint police officer-school administrator seizure is not for the purpose of maintaining order on school property. *Jones*, 410 F.3d 1221, 1228 (10th Cir. 2005). The *Jones* court reasoned that in *T.L.O.*, concerns for allowing school administrators to maintain security and order justified easing the usual Fourth Amendment requirements of probable cause and a warrant. *See id* at 1228; *see also New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985). Thus, the Tenth Circuit made clear that there is no justification for easing the usual requirement of probable cause and instead applying the *T.L.O.* reasonableness standard when the police are involved in a seizure that is not designed to maintain school order or security.

Here, Defendants do not claim that Principal Hopmeier had reason to believe that Zachery was acting disruptively or had violated a school rule or law when he ordered Zachery removed from class so the police could take Zachery to the station for questioning. Since there is no evidence that Zachery was acting disruptively or had violated any law or school rule, the Court must conclude that seizing Zachery did not help maintain security or order. Thus, as the Tenth Circuit recognized in *Jones*, the *T.L.O.* standard does not apply. Rather, the proper standard is probable cause.

Further, even if the initial removal from class were governed by the *T.L.O.* standard, at the point when Defendant Hopmeier permitted the police to handcuff and involuntarily transport Zachery from the school, a place where Zachery was entitled to be, to the police station for questioning, the probable cause standard must govern. *See Hayes v. Florida*, 470 U.S. 811, 815-16

9

(1985) ("our view continues to be that the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes. We adhere to the view that such seizures, at least where not under judicial supervision, are sufficiently like arrests to invoke the traditional rule that arrests may constitutionally be made only on probable cause.").[1]

> b.  *Applying the Proper Standard*
>
> *(1) Applying the Probable Cause Standard*

Probable cause for a warrantless arrest requires a court to find that the facts known to the officer that were based on reliable information would warrant a reasonably careful person to believe that a crime had been or was being committed. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) (quoting *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001)). In contrast, a mere suspicion of criminal activity, even if reasonable, does not suffice. *United States v. Maher*, 919 F.2d 1482, 1485 (10th Cir. 1990). Probable cause requires that a reasonable person would find the suspect's guilt to a fair probability rather than a mere possibility. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (requiring a "fair probability that contraband or evidence of a crime will be found in a particular place").

---

[1]While the Court finds that the probable cause standard applies in this case, summary judgment would be improper even if the *T.L.O.* standard applied instead. Under *T.L.O.*, the officers must have initially had justification for the search and the scope of the search must have been reasonably related to the circumstances that initially justified it. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). Under the first prong, a search is initially justified if the school official has reasonable suspicion that the student violated the law or a school rule. *See id.* at 341-42. As discussed below, Principal Hopmeier had no evidence that Zachery had violated any law or school rule when he called Zachery out of class and permitted the subsequent arrest.

The Court finds that Defendant Hopmeier had no probable cause to arrest Zachery. Defendants have conceded that neither the police officers present nor Principal Hopmeier had any evidence that Zachery had violated any law or school rule when they decided to seize him from his classroom. Instead, Officer Larsen informed Defendant Hopmeier that he desired to seize Zachery solely because Zachery was considered a possible witness to a crime committed by another. Further, Defendants concede that Zachery affirmatively conveyed his desire to stay in school and declined to voluntarily accompany the police to the station. Finally, even if the probable cause requirement only attached once the officers decided to handcuff Zachery, none of the government officials at this point had any evidence that Zachery had committed any crime. Thus, Defendant Hopmeier had no reason to believe either that Zachery had violated the law or that Zachery personally consented to his arrest. Thus, Defendant Hopmeier has not shown that probable cause supported Zachery's arrest. Yet, Defendant Hopmeier ordered the seizure of Zachery and permitted the officers to arrest and remove him from school grounds involuntarily.[2]

In his defense, Defendant Hopmeier raises the joint participant doctrine as a shield, arguing that he should not be liable for merely "following a police directive."[3] (Doc. 14, at 9.) Under this

---

[2]Further, it is no defense that Defendant Hopmeier did not personally handcuff Zachery. A government official has a duty to intervene to help a citizen whose constitutional rights are being violated in the officer's presence, where the official had a reasonable opportunity to intervene. *See Mick ex rel. Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996); *see also Hall v. Burke*, 12 Fed. Appx. 856, 861 (10th Cir. 2001); *Smith v. Kenny*, 678 F. Supp. 2d 1124, 1147-48 (D.N.M. 2009). This extends to unlawful arrests. *Hall*, 12 Fed. Appx. at 861. Because evidence suggests that at least several minutes passed between the time Principal Hopmeier ordered Zachery to be pulled out of class and the time when the officers forcibly removed him from school grounds without reasonable suspicion or probable cause, a reasonable jury could find that Defendant Hopmeier had a reasonable opportunity to intervene and prevent Zachery's unlawful arrest, even though Defendant Hopmeier made no such effort.

[3]Notably, in support of the argument that he should not be liable for merely "following a police directive," the only theories to which Defendant cites are the joint participation doctrine and the fellow officer doctrine; Defendant did not raise the personal participation theory to

doctrine, when a "private party" follows police direction in assisting in a search, that private party is immune from liability if he "followed the ostensibly legitimate orders of a state official for the mere purpose of assisting the state with its investigatory powers."[4] *Warner v. Grand County*, 57 F.3d 962, 965 (10th Cir. 1995). Defendant Hopmeier argues that he and Officer Larsen, who executed the arrest, were not joint participants, so Defendant Hopmeier is immune from liability. However, this doctrine is only relevant to assessing the constitutional liability of private parties. Defendant Hopmeier apparently assumes that he is a private party. He is mistaken. School authorities generally act as state actors when searching or seizing a student on school grounds. *New Jersey v. T.L.O.*, 469 U.S. 325, 336-37 (1985). Consequently, Defendant Hopmeier can find no refuge in the joint participant doctrine.

Defendant Hopmeier appears somewhat confused about his constitutional status, as he seeks refuge not only under a doctrine applicable only to private actors, but also under a doctrine applicable only to state actors: the fellow officer doctrine. Under this doctrine, a police officer called

---

support this defense. Thus, the Court deems this argument waived. *See Tele-Commc'n, Inc. v. Comm'r*, 104 F.3d 1229, 1234 (10th Cir. 1997).

Further, this theory would not have helped Defendant even if it had been properly raised. Under this theory, for a non-supervisory defendant, "there must be cause in fact between the conduct complained of and the constitutional deprivation." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990); *see also Mink v. Knox*, 613 F.3d 995, 1001-02 (10th Cir. 2010) (indicating that this standard remains the same for non-supervisors post-*Iqbal*). Any government official who "set in motion a series of events" that the defendant knew or should have known would cause others to deprive the plaintiff of her constitutional rights can be held liable. *Snell*, 920 F.2d at 700 (quoting *Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988)). There is undisputed evidence that Officer Larsen informed Defendant Hopmeier before the initial seizure that the officers had no evidence that Zachery had violated any law or school rule when they decided to seize him from school. Thus, Defendant Hopmeier should have known that by ordering Zachery to be seized from his classroom, he was setting in motion events that would cause police officers to arrest Zachery unlawfully.

[4]In contrast, a private party is treated as a state actor if the private party is a willful participant in joint action with the state or its agents. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).

to help another officer in executing an arrest warrant may assess probable cause by relying on information provided by the other officer, so long as the reliance is reasonable. *Oliver v. Woods*, 209 F.3d 1179, 1190-91 (10th Cir. 2000). Defendant Hopmeier argues that the state police informed Principal Hopmeier that the police needed to question Zachery as a potential witness to a crime.

While Defendant Hopmeier is correct here in assuming that he is a state actor, he is incorrect in concluding that this doctrine shields him from liability. Under this doctrine, a defendant still has the burden to show that some officer had information that would support a finding of probable cause, even if that information ultimately proves to be flawed. *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985). In *Fogarty v. Gallegos*, the Tenth Circuit refused to apply the fellow officer defense where the defendants failed to provide any evidence that any officer provided to any other officer information that would indicate probable cause. 523 F.3d 1147, 1157 n.10 (10th Cir. 2008).

Here, no officer ever represented to Defendant Hopmeier that he had probable cause. Rather, the officers requested to seize Zachery while explaining that Zachery was not suspected of any crime, but rather was merely a potential witness to a crime. Further, the police never suggested that they had probable cause. Finally, Defendant Hopmeier concedes that Zachery made clear his unwillingness to voluntarily go to the police station. Therefore, it would be unreasonable for Defendant Hopmeier to assume that the police officers had probable cause, when the police never conveyed to Hopmeier any information that would support this conclusion.

### (2) The Consent Exception

To support a finding that the arrest was justified, Defendant Hopmeier claims that one of the officers told him that Zachery's mother had been informed that the police wanted to take Zachery to the police station, and had consented. In contrast, Zachery claims that nobody provided any such information to Principal Hopmeier. While a warrantless seizure generally requires probable cause,

13

there is an exception to the probable cause requirement where the subject consents to the seizure. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). However, the question remains whether a third party, here a parent, may consent to the seizure of a sixteen-year-old teenage son. The most closely related case law on point consists of cases involving parental consent for searches and seizures of a child's property, rather than seizures of children themselves.

In the context of property searches, in the Tenth Circuit a parent may consent to a search of a child's room against the child's will where either (a) the parent and child share joint access to the room or (b) the parent has control over the room for most purposes. *See United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999). However, this case law fails to provide meaningful guidance here. It does not follow that "whenever a third party has capacity to consent to a search of an object, . . . there is likewise capacity to consent to a seizure of the same object, for nothing could be further from the truth." Wayne R. LaFave, Search and Seizure: A Treatise On The Fourth Amendment § 8.3 (4th ed. 2004). The rationale for third-party consent to search sometimes will not justify third-party consent to seize. Notably, the logic underlying the third-party consent rationale for property is particularly inapplicable to consent to seize another's body.

First, third-party consent in the search context rests on the principle that people have a "diminished expectation of privacy" over shared property. LaFave, *supra*, § 8.3 (quoting *State v. Lacey*, 349 Mont. 371 (2009)). In contrast to property, to which a parent and her minor child can share access and ownership, a parent does not own her child's body. *See* Avi Katz, Surrogate Motherhood and the Baby-Selling Laws, 20 Colum. J.L. & Soc. Probs. 1, 8 n.34 (1986) (collecting statutes that prohibit natural parents from selling their children for money); *In re Adoption of Bruner*, 2006 Ohio 497, 508 (2006) (explaining that the purpose of laws prohibiting the sale of children is so that "children could [not] be sold to the highest bidder and shuffled around like objects on an

14

auction block"). Therefore, unlike property that a parent may own and share with her child, the parent-teenager relationship does not raise a presumption of a diminished expectation of privacy in the teen's body.

Second, the justification behind third-party parental consent for searches does not translate to arrests because courts are particularly concerned about protecting minors from deprivations of liberty, as contrasted with deprivations of property. *Levell W. v. California*, 449 U.S. 1043, 1047 (1980). As one facet of this special concern for the liberty interests of minors, the Supreme Court has been careful to respect the right of mature minors to override a parent's wishes regarding the minor's bodily integrity. *See Planned Parenthood v. Danforth*, 428 U.S. 52, 74 (1976) (noting that a state cannot "give a [parent] an absolute, and possibly arbitrary, veto over the decision of the [minor child] to terminate [her] pregnancy"); *Planned Parenthood Ass'n of Kansas City v. Ashcroft*, 462 U.S. 476, 490-91 (1983) (holding that the Constitution protects the right of teens that prove their maturity to obtain an abortion regardless of parental consent). Consequently, the maturity of minors should be considered a key factor in assessing whether or not parents may effectively consent on behalf of a child to that child's arrest.[5]

The Court finds that, by age sixteen, a minor is mature enough to enjoy the right to withhold consent to an arrest. This conclusion is rooted in the maturity that courts categorically attribute to sixteen-year-old teenagers in other aspects of our criminal justice system. In at least forty-five states, sixteen-year-old juveniles also may be either tried or sentenced as adults under certain

---

[5]Further, focusing on a minor's maturity is appropriate because it properly respects the right of parents to provide consent to the seizure of younger children who obviously lack the experience or knowledge necessary to provide consent on their own. *See, e.g.*, *Couture v. Bd. of Educ. of the Abq. Pub. Sch.*, 535 F.3d 1243, 1252 (10th Cir. 2008) (finding a seizure of a first-grade student reasonable where the student's mother had consented in writing to the Individualized Education Plan that included special time-outs for disruptive behavior).

circumstances. *See* U.S. Department of Justice Office of Juvenile Justice and Delinquency Prevention, Delinquency Cases Waived to Criminal Court, 2007 1, 2 (June 2010) (noting that forty-five states have judicial waiver provisions and further that in 2007, 88% of juveniles judicially transferred to adult court were sixteen or seventeen years old); *see also Cornfield ex rel. Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1321 (7th Cir. 1993) (noting that at common law, "[c]hildren over the age of fourteen were treated as having the same criminal capacity as adults" and consequently children over age fourteen should be treated as capable of giving consent under the Fourth Amendment). This is specifically true in New Mexico, where Zachery was arrested. *See* N.M. Stat. Ann. §§ 32A-2-3(H)(J) (1993), 32A-2-20(A); *see also State v. Rudy B.*, No. 31, 909, 2010 N.M. LEXIS 531, at *12-*14 (Oct. 19, 2010). Even more apropos, the Supreme Court has held sixteen-year-old teenagers mature enough to understand their *Miranda* rights and to waive them without parental consent. *See Fare v. Michael C.*, 442 U.S. 707, 724-27 (1979).

Thus, as the law categorically attributes to sixteen-year-old minors the maturity to deserve adult treatment in the criminal justice system, sixteen-year-old teenagers also have enough maturity to decide for themselves whether to withhold consent to their own arrest.[6] In consequence, an officer may not reasonably arrest a sixteen-year-old teenager under the Fourth Amendment against the teenager's will, even if his parents, as is hotly disputed here, have consented to the arrest. Thus, Hopmeier's actions, unsupported by probable cause, violated Zachery's Fourth Amendment rights.

Finally, assuming *arguendo* that a parent could consent to the arrest of her child against the child's will, a material dispute of fact exists regarding whether anyone actually told Defendant

---

[6]The Court notes that a minor's decision to withhold consent may involve very different facts from a situation in which a parent attempts to withhold consent to the child's arrest even though the child has consented to arrest. Consequently, the Court draws no conclusion about whether a parent has a right to withhold consent on behalf of a child.

Hopmeier that an officer had contacted Zachery's mother. While Defendant Hopmeier insists that one of the officers claimed to have called Zachery's mother and obtained her consent to the seizure, the other officers claim that no one had contacted Zachery's mother before the seizure and this representation was not made to Defendant Hopmeier. Thus, summary judgment against Plaintiff would be improper on this theory even absent the Court's holding that a parent cannot legally consent to the arrest of a sixteen-year-old child over the child's denial of consent.

For the same reasons that Defendant Hopmeier cannot establish probable cause, he cannot establish reasonable suspicion that Zachery violated any law or school rule. Therefore, summary judgment against Plaintiff on Zachery's Fourth Amendment seizure claim is improper. Further, since Defendant Hopmeier has provided no evidence under which the Court could find the seizure constitutional, the Court finds partial summary judgment for Plaintiff proper on the issue of the unconstitutionality of Zachery's seizure.

**B. Search Claim**

Just as with seizures, "[w]ith limited exceptions, a search . . . requires either a warrant or probable cause." *Jones v. Hunt*, 410 F.3d 1221, 1227 (10th Cir. 2005). Here, in contrast with the seizure, no party claims that the police officers were involved in requesting or conducting the search. Rather, a school security guard, Chris Archuleta, testified that Principal Hopmeier ordered him to search Zachery without any instruction from the police. Thus, *New Jersey v. T.L.O.*, which governs searches conducted by school officials, 469 U.S. 325, 341 (1985), provides the relevant Fourth Amendment standard. In *T.L.O.*, the Supreme Court recognized an exception for school administrators, holding that the legality of a search should depend on: (1) whether the officers initially had justification for the search; and (2) whether the scope of the search was reasonably related to the circumstances that initially justified the interference. *Id.* at 333, 341. A search will be

"justified at its inception" where a student's conduct creates a reasonable suspicion that a particular law or rule has been violated, "with the search serving to produce evidence of the violation." *Willis ex rel. Willis v. Anderson Cmty. Sch. Corp.*, 158 F.3d 415, 418 (7th Cir. 1998).

There is a material dispute of fact regarding whether Zachery became unruly just before Officer Larsen handcuffed him and the security guard initiated the search. Defendant Hopmeier argues that Zachery became "unmanageable" when Officer Larsen insisted that Zachery come to the police station against his will. In contrast, Plaintiff asserts that he did not try to run away or physically resist the officers, but rather tensed up his body.

Defendant Hopmeier relies on his version of the facts in claiming that the search was justified. Viewing the facts in the light most favorable to the non-movant Plaintiff, there was no reason to order Zachery searched if he did not become unmanageable as there was no evidence that he had violated any law or school rule. Thus, under Zachery's version, Defendant Hopmeier had no initial justification for the search, making it unconstitutional. Therefore, summary judgment against Plaintiff on Zachery's Fourth Amendment search claim is improper.

Further, with regard to Plaintiff's partial motion for summary judgment, viewing the facts in the light most favorable to Defendant Hopmeier, Zachery's unruly conduct in violation of school policy would not have given Defendant Hopmeier the reasonable suspicion necessary to search Zachery. Defendant Hopmeier ordered Chris Archuleta to search Zachery only after Zachery had been handcuffed. Since the act of restraining Zachery presumably eliminated any security threat that Zachery previously posed, Defendant Hopmeier's claim that Zachery became "unmanageable" just before Officer Larsen handcuffed him provides no justification for a search ordered after Zachery was handcuffed. As Defendant Hopmeier nowhere alleges that he thought that Zachery continued to be "unmanageable" after being handcuffed, or that he suspected that Zachery was carrying

18

anything dangerous, there is no indication that Principal Hopmeier thought the search after Zachery had been handcuffed would turn up evidence of any misconduct. Thus, whatever reasonable grounds Defendant Hopmeier might have had to search Zachery before handcuffing him, he no longer had after Zachery had been handcuffed. Since both parties agree that the search occurred after Zachery was handcuffed, if a jury finds that Defendant Hopmeier ordered the search, that search was without reasonable suspicion and was thus unconstitutional.

Finally, even assuming that Defendant Hopmeier had grounds to initiate the pat-down of Zachery after the handcuffing based on his "unruly" conduct prior to the handcuffing, the scope of the search was unreasonable. A search must be "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *T.L.O.*, 469 U.S. at 341. In *Knisley v. Pike County Joint Vocational Sch. Dist.*, the Sixth Circuit held that a group strip-search exceeded the reasonable scope where the officials lacked reasonable suspicion that any particular student has violated a school rule and there was no reason to suspect that any of the searched students possessed weapons or drugs. 604 F.3d 977, 981 (6th Cir. 2010). Here, as in *Knisley*, Defendant Hopmeier nowhere alleges that he suspected that Zachery carried any weapon or drug. Further, the initial pat-down search revealed nothing that might be a weapon or drug. Therefore, permitting Mr. Archuleta to search into Zachery's pockets, wallet, and shoes was excessively intrusive in light of the claim of mere unruly conduct prior to being restrained; thus, the scope of the search was unconstitutional.

## II.      Qualified Immunity with Respect to the Fourth Amendment Claims

Defendants argue that qualified immunity shields them from liability. Qualified immunity is unavailable where officers have violated a "clearly established" constitutional right of which a "reasonable person" would have known. *See Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002).

19

Qualified immunity involves a two-part test: (a) whether the officer committed a constitutional violation and (b) if so, whether the right was clearly established. *See id; Pearson v. Callahan*, 129 S.Ct. 808, 815-16, 818 (2009). The Court may address both prongs, or may choose to address only the latter prong. *Pearson*, 129 S.Ct. at 818.

### A. Seizure Claim

Defendant Hopmeier argues both that his actions were constitutional and that even if unconstitutional, the law was not clearly established.

#### 1. *Constitutionality of the Seizure*

Part I.A of this opinion finds that Defendant Hopmeier violated Zachery's Fourth Amendment right to be free from unreasonable seizures.

#### 2. *Clarity of the Law*

The second part of the qualified immunity test requires the Court to answer whether the constitutional right that the official violated was clearly established. *Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002). This prong is an objective test, which turns on a reasonable officer's understanding, not the officer's actual knowledge. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A "clearly established" constitutional right has contours clear enough that a reasonable official would understand that his actions violate that right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

To determine whether a right is "clearly established," Tenth Circuit courts look primarily to Supreme Court and Tenth Circuit case law, but also to dominant trends in other circuits. *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). "To defeat a claim of qualified immunity, plaintiffs need not point to a prior holding that the specific conduct at issue is unlawful; rather, the unlawfulness of the alleged action must have been apparent." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005).

*a.   What Constitutes a Seizure*

Under the Fourth Amendment, a seizure occurs when "a reasonable person would have believed that he was not free to leave." *Jones*, 410 F.3d at 1225-26 (quoting *Michigan v. Chesternut*, 486 U.S. 567 (1988)). The court views the facts as a reasonable person of the age of the detained person. *See id.* at 1226. By June of 2005, the Tenth Circuit established that a seizure occurs where a police officer corners a sixteen-year-old student at her high school, harasses her for several hours, and threatens to arrest her. *Id.* at 1224, 1226. The facts of this case closely parallel those in *Jones*. Thus, a reasonable official in Defendant Hopmeier's shoes should have known that by calling sixteen-year-old Zachery out of class to assist the police officers with the arrest, he seized Zachery for Fourth Amendment purposes.

*b.   What Fourth Amendment Standard Applies to Defendant Hopmeier's Actions*

The Supreme Court established the *T.L.O.* standard in 1985, well before the seizure at issue here took place. Thus, the settled law by 2009 indicated that at a minimum, the Constitution demanded that school administrators assisting police officers to seize a student must harbor a reasonable suspicion that the student had violated a school rule or a law. *See New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985); *see also Jones*, 410 F.3d at 1229 (noting that it was clearly established by 2003 that seizures, at a minimum, must be reasonable).

Therefore, a reasonable officer would have known that he at least had to harbor reasonable suspicion that Zachery had violated the law or a school rule. *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985). No party suggests that Defendant Hopmeier had any reason to believe that Zachery had violated any law or school rule when Hopmeier ordered Zachery to be pulled out of class. Therefore, a reasonable official would have known that he was violating at least the minimal standard of conduct to which he was bound. Further, Defendant Hopmeier conceded as much in his

21

deposition by admitting that if he not been informed that Zachery's mother had consented to the arrest, he would not have permitted it, because "[he's] not that stupid." (Doc. 35, Pl. Ex. 2 at 138.)

Defendant Hopmeier also argues that he should not be liable for the officers' seizure of Zachery because under the joint participant doctrine, "the law was not clearly established that a private citizen following a police directive violates the Fourth Amendment in these circumstances." However, as discussed above, the joint participant doctrine only applies to private parties, not to state actors. The law has been clearly established since 1985 that school administrators act as state actors when seizing a student on school grounds. *T.L.O.*, 469 U.S. at 336-37. Thus, this doctrine could not have created any genuine uncertainty in the law applicable to Defendant Hopmeier.[7]

### c.   Whether Parents Can Effectively Consent to the Seizure of their Teenage Son

Finally, the Court need not answer whether or not it was clearly established that a parent may not provide effective consent for the arrest of a sixteen-year-old child, because there is a material dispute of fact regarding whether anyone even told Defendant Hopmeier that Zachery's mother provided consent. Defendant Hopmeier claims that one of the officers had informed him that Zachery's parents had consented to Zachery's removal from the school. (Doc. 14, Def. Ex. D at 23-24.) (Defendant Hopmeier testified that "[the officers] stressed a few times that they had contacted

---

[7] As also discussed above, Defendants waived any defense under a personal participation theory by failing to raise it. However, it would not have provided them qualified immunity in any event. The Tenth Circuit has clearly held since 1990 that an official may be liable under section 1983 if the plaintiff shows that the official "set in motion a series of events" that the official knew or should have known would cause others to deprive the plaintiff of his constitutional rights. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990). Viewing the facts in the light most favorable to Plaintiff, Defendant Hopmeier ordered Zachery to be seized from class so that the police officers could arrest Zachery and take him to the police station without probable cause, reasonable suspicion, or consent. Defendant Hopmeier therefore set in motion a series of events that he should have known would cause Zachery to be unlawfully arrested. Consequently, the law was clear by November of 2007 that Defendant Hopmeier had a duty to not engage in actions likely to cause others to deprive his students of their constitutional rights, including pulling a student out of class so that police officers could unlawfully arrest him.

the mom, the mom was okay, and they were going to meet the mom down at the police station . . .").
Plaintiff disputes this fact, citing Officer Larsen's statements that (a) he had not told Principal
Hopmeier that anyone had contacted Zachery's parents, (b) nobody at the police station had contact
information for Zachery's parents before visiting the school on November 6, 2007, and (c) the police
did not in fact contact Zachery's parents until after arresting him and taking him off campus.

Further, in Defendant Hopmeier's deposition, he himself backtracked on whether he had been
informed that Zachery's mother had actually consented to the seizure, or instead had just received
notice of it. First Principal Hopmeier clarified that he did not remember ever hearing the actual word
"consent." (Doc. 35, Pl. Ex. 2 at 166.) Then he equivocated on whether he had even been told that
the mother had granted "permission." (*Id.* at 166-67.) He clarified that at least he had heard that "the
mom knew what was going on, and that the mom knew that they were going to go get the son from
the school and take him down to the police station, and that there was going to be some questioning.
I know that that was --that's a solid. That's a given." (*Id.*) Assuming that Principal Hopmeier heard
only that information, it would not amount to consent, but rather mere notice. Consequently,
Defendant Hopmeier's own testimony, coupled with Officer Larsen's testimony, creates a dispute
of material fact about whether or not Defendant Hopmeier was ever told that Zachery's mother
consented to Zachery's seizure. Therefore, summary judgment is improper on Defendant Hopmeier's
qualified immunity claim for the seizure of Zachery.

## B. Search Claim

With respect to Plaintiff's search claim, Defendant Hopmeier argues both that his actions
were constitutional and that even if unconstitutional, the law was not clearly established.

### 1.  Constitutionality of the Search

Having concluded in Part I.B above that Defendant Hopmeier's search was unconstitutional, the Court now assesses whether the law was clearly established.

### 2.  Clarity of the Law

The second part of the qualified immunity test requires the Court to answer whether the constitutional right that the official violated was clearly established. *Hope v. Pelzer*, 536 U.S. 730, 736, 739 (2002). Defendant Hopmeier argues that the law is unclear about which Fourth Amendment standard applies to the search at issue, first reasoning that the *T.L.O.* Court left open the proper standard for searches conducted by school authorities in conjunction with police officers. Defendant Hopmeier is correct in his description of *T.L.O. See New Jersey v. T.L.O.*, 469 U.S. 325, 341 n.7 (1985). However, the search at issue here did not involve school authorities acting in conjunction with police officers. In this case nobody claims that the police officers requested the search or conducted it. Rather, Officer Larsen testified that Principal Hopmeier ordered Zachery to be brought into his office where security guard Chris Archuleta searched him, and Mr. Archuleta corroborated this account. Thus, a reasonable officer would understand which standard applied, because *T.L.O.*, which governs searches ordered and executed by school officials, clearly governs a search initiated solely by a school principal and conducted solely by a school security guard.

Further, even if the police officers could somehow be construed as having substantially participated in the search, a reasonable official would have known that as a constitutional minimum, he would at least have to follow the *T.L.O.* standard. In *T.L.O.*, when the Court clarified that it left open the appropriate standard for searches that school officials conducted in concert with police officers, it cited to *Picha v. Wielgos*, a federal case that found probable cause the appropriate standard for such searches. *Id.* at 341 n.7. By citing to *Picha*, the Court intimated that the question

24

left open was whether the lower *T.L.O.* standard of reasonableness, or instead the higher probable cause standard would apply when police participated in the search. Consequently, there is no open question about whether some standard less exacting than the *T.L.O.* reasonableness standard applies, but rather only whether the more exacting probable cause standard applies when police officers participate in the search. As such, a reasonable official in Defendant Hopmeier's position would have known that the Fourth Amendment would at least require him to satisfy the *T.L.O.* test in ordering the search of Zachery.

In a final attempt to secure the protection of qualified immunity, Defendant Hopmeier argues that the law was unclear because the Supreme Court has found suspicionless searches in the school setting sometimes justified, citing to *Vernonia Sch. Dist. 47j v. Acton*, 515 U.S. 646, 653 (1995) and *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822 (2002). However, this argument is without merit as these precedents are inapposite. *Vernonia* and *Earls* were cases that permitted random, suspicionless drug testing of students who voluntarily participated in extracurricular activities. *See Vernonia Sch. Dist. 47j*, 515 U.S. at 664-65; *Earls*, 536 U.S. at 825. The Court emphasized that students who participate in extracurricular activities have a more limited expectation of privacy than students who do not. *See Earls*, 536 U.S. at 831; *Vernonia Sch. Dist. 47j*, 515 U.S. at 657 ("There is an additional respect in which school athletes have a reduced expectation of privacy. By choosing to 'go out for the team,' they voluntarily subject themselves to a degree of regulation even higher than that imposed on students generally."). This rationale obviously distinguishes searches conducted on student participants in extracurricular activities from the general student body. Since the search at issue here was not conducted in conjunction with an extracurricular activity, a reasonable official would have no reason to believe that the *Vernonia* suspicionless standard might apply.

Thus, a reasonable official in Defendant Hopmeier's position would have understood that he at least had to follow the *T.L.O.* standard of bearing reasonable suspicion to initiate a search of a student. As Defendant Hopmeier has failed to show that he had reasonable suspicion that Zachery had broken any law or school rule, qualified immunity is improper at this stage.

### III.   *Monell* Claim

Plaintiff Zachery has alleged a claim under *Monell v. Dept of Soc. Servs.*, 436 U.S. 658 (1978), for municipal liability for Zachery's detention, search, and arrest. In order to prevail on a claim of municipal liability, a plaintiff must prove that a constitutional violation occurred, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), and that his constitutional injury was inflicted pursuant to government policy or custom. *Monell*, 436 U.S. at 691. Defendant School Board argues that the Court should grant summary judgment on Plaintiff's *Monell* claim, arguing solely at this juncture that Plaintiff cannot sustain a *Monell* claim because no constitutional violation occurred. For this summary judgment motion, the parties jointly stipulated that the only issue that Defendant raises under *Monell* is whether Defendant is entitled to summary judgment on the ground that "there was no underlying constitutional deprivation." (Doc. 30, at 1.) Since the Court has found enough evidence to sustain findings of multiple constitutional violations, summary judgment against Plaintiff on his *Monell* claim is improper at this stage.

### IV.   **Tort Claims Act Immunity**

Defendant Hopmeier argues that Plaintiff raised a negligence claim against him, but that he enjoys sovereign immunity under the Tort Claims Act. This Court can find no negligence claim raised in Plaintiff's complaint. However, to the extent that Plaintiff did make such an allegation, there is no waiver of immunity under the Tort Claims Act that would permit Plaintiff to move

forward on such a claim. N.M. Stat. Ann. §§ 41-4-4 - 41-4-12 (2010). Thus, summary judgment is proper on any negligence claim against Defendant Hopmeier.

## **Order**

A Memorandum Opinion having been filed, Defendants' motion for summary judgment (Doc. 13) is GRANTED in part and DENIED in part, and Plaintiff's cross motion for partial summary judgment (Doc. 31) is GRANTED.

Dated: March 09, 2011

**BRUCE D. BLACK**
**UNITED STATES DISTRICT JUDGE**